**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | **Case No. 16-po-08806** |
| **v.** | * | |
| | * | |
| | * | |
| **MARCUS M. DOWNING,** | * | |
| | * | |
| | * | |
| **Defendant** | * | |

\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OPINION AND ORDER OF COURT**

On July 21, 2016, Defendant was issued violation notices charging him with (1) operating or being in actual physical control of a motor vehicle while under the influence of alcohol, in violation of 36 C.F.R. § 4.23(a)(1); (2) operating or being in actual physical control of a motor vehicle with a breath alcohol concentration of 0.08 grams or more of alcohol per 210 liters of breath, in violation of 36 C.F.R. § 4.23(a)(2); (3) unsafe operation of a motor vehicle, in violation of 36 C.F.R. § 4.22(b)(1); and (4) obstructing traffic, in violation of 36 C.F.R. § 4.13. At his bench trial on January 9, 2017, Defendant moved for judgment of acquittal of all four charges at the conclusion of the Government's case. The Court denied the motion. During closing argument, Defendant argued that he should be found not guilty of all the charges because the Government failed to prove that he was in actual physical control of his motor vehicle while he was intoxicated at the time of the incident. The Court took the matter under advisement.

**BACKGROUND**

While traveling northbound in his patrol car on the Baltimore-Washington Parkway (the "Parkway") on July 21, 2016, at about 3:00 a.m. near Route 197, United States Park Police

("USPP") Sergeant Adam Zielinski observed and approached Defendant's vehicle parked partially on the right shoulder and in the right lane on the Parkway.  The vehicle's left wheels were a foot in the lane, and its headlights were on.  Sergeant Zielinski activated his emergency equipment and, leaving his patrol car, approached the vehicle on foot.  Defendant, who was asleep in the middle of the back seat with his feet on the center console, was the sole occupant of the vehicle.  The vehicle's engine was running, and its doors were locked.  In an attempt to awaken Defendant, Sergeant Zielinski tapped loudly on the right rear passenger window several times with his flashlight.  Defendant finally woke up, appearing groggy and lethargic.  Sergeant Zielinski detected an odor of alcohol and called for officer assistance.  The vehicle's air conditioner was on.  Defendant exited the vehicle at the sergeant's direction.  Defendant admitted that he had been drinking vodka at TGI Fridays, but stated that someone named "Dirk" had been driving the vehicle.  Defendant stated that he had begun drinking vodka at 8:30 the previous evening and had stopped drinking at one o'clock that morning.

The sergeant performed a horizontal-gaze nystagmus field sobriety test and a roadside breath test, which was positive for alcohol.  Because of Defendant's inability to maintain his balance, the sergeant did not administer the "walk and turn" and "one leg stand" sobriety tests.  On the basis of Sergeant Zielinski's testing, he arrested Defendant for driving under the influence of alcohol.

While searching Defendant incidentally to his arrest, the sergeant found the vehicle's key fob in Defendant's left rear pocket.  According to Sergeant Zielinski, with this type of "push start" key fob in close proximity to a vehicle, a driver could start the vehicle by pushing a start button inside it.  During the sergeant's search of Defendant's vehicle, he found an open bottle of vodka in the back seat area where Defendant had been sitting.  Officers at the scene searched the

surrounding area but found no other person in the area.  Sergeant Zielinski left the scene with

Defendant in custody before Defendant's vehicle was towed.

Sergeant Zielinski transported Defendant to the USPP Greenbelt substation, where

Defendant agreed to submit to a breath alcohol test after he was provided with the 36 C.F.R.

chemical testing notice.  Intoxilyzer testing of Defendant's breath revealed results of 0.19 and

0.21.  Defendant was cited and released.

At Defendant's bench trial, the Court ultimately found that, on July 21, 2016, Defendant

was in the back seat of his vehicle, with its engine running and its lights and air conditioner on,

while it was partially parked in the travel lane of the Parkway.  The Court also found that

Defendant had possessed the vehicle's key fob and had a breath alcohol level of at least 0.08.

The Court further found that there was an open container of alcohol in close vicinity to

Defendant in the vehicle.  Also, there was no evidence of the presence of anyone else at the

scene besides Defendant's statement to Sergeant Zielinski.  The Court, however, reserved ruling

on whether Defendant was in actual physical control of his vehicle until after the parties

submitted briefing on the issue.

## DISCUSSION

"[F]ederal law preempts state law on the issue of intoxicated motor-vehicle operators

within national park areas."  *United States v. Coleman*, 750 F. Supp. 191, 193 (W.D. Va. 1990).

The Code of Federal Regulations prohibits "[o]perating or being in actual physical control of a

motor vehicle" while "[u]nder the influence of alcohol, or a drug, or drugs, or any combination

thereof, to a degree that renders the operator incapable of safe operation."   36 C.F.R.

§ 4.23(a)(1).

The Government bears the burden of proving each element of this offense,
specifically that (1) Defendant was operating or was in actual physical control of

a vehicle, (2) that Defendant was under the influence of alcohol, or a drug, or drugs, or any combination thereof, and (3) to a degree of intoxication that rendered Defendant incapable of safe operation.

*United States v. Davis*, 261 F. Supp. 2d 343, 347 (D. Md. 2003) (citing 36 C.F.R. § 4.23(a)(1)). It is undisputed in this case that Defendant was under the influence of alcohol to a degree that rendered him incapable of safe operation when Sergeant Zielinski found him on July 21, 2016, on the Parkway, which is under the jurisdiction of the National Park Service. *United States v. Kim*, 902 F. Supp. 2d 763, 765 (D. Md. 2012). Rather, the issue here is whether the Government has established beyond a reasonable doubt that Defendant was in "actual physical control" of his vehicle at the time he was under the influence. Defendant contends that the Court should find him not guilty of driving under the influence of alcohol because he was not in actual physical control of his motor vehicle when Sergeant Zielinski arrested him.

An "operator" of a motor vehicle is defined as "a person who operates, drives, controls, otherwise has charge of or is in actual physical control of a mechanical mode of transportation or any other mechanical equipment." 36 C.F.R. § 1.4(a). Thus, "[t]he definition of operator encompasses a broader range of behavior than just driving." *United States v. Griffin*, 400 F. App'x 783, 785 (4th Cir. 2010) (per curiam). Section 4.23(a)(1) "prohibits not only operation of a motor vehicle while under the influence, but extends to 'being in actual physical control' while under the influence." *United States v. McFarland*, 369 F. Supp. 2d 54, 57 (D. Me. 2005), *aff'd*, 445 F.3d 29 (1st Cir. 2006). Thus, "[i]f 'being in actual physical control' is to mean anything, it must refer to something less than actual operation." *Id.*

"To determine whether the evidence is sufficient to sustain a conclusion of 'actual physical control,' a 'totality of circumstances' test is commonly applied." *Id.* at 60 (citing cases). Factors to consider when determining "actual physical control" include the following:

4

1) whether or not the vehicle's engine is running, or the ignition on;

2) where and in what position the person is found in the vehicle;

3) whether the person is awake or asleep;

4) where the vehicle's ignition key is located;

5) whether the vehicle's headlights are on;

6) whether the vehicle is located in the roadway or is legally parked.

*Atkinson v. State*, 627 A.2d 1019, 1027 (Md. 1993).  Other factors include "whether the driver had voluntarily pulled off the road; time of day and weather conditions; if the heater or air conditioner was on; whether the windows were up or down; and any explanation of the circumstances advanced by the defense."  *State v. Love*, 897 P.2d 626, 628 (Ariz. 1995).  No one factor will be dispositive of whether the defendant was in "actual physical control" of the vehicle.  *Atkinson*, 627 A.2d at 1028.

Here, when Sergeant Zielinski encountered Defendant on the Parkway, Defendant's vehicle was parked partially on the shoulder, with its left wheels in the roadway and its headlights and air conditioner turned on, suggesting Defendant's actual physical control of the vehicle.  "Indeed, once an individual has started the vehicle, he or she has come as close as possible to actually driving without doing so and will generally be in 'actual physical control' of the vehicle."  *Id.*  Moreover,

> [t]he location of the vehicle can be a determinative factor in the inquiry because a person whose vehicle is parked illegally or stopped in the roadway is obligated by law to move the vehicle, and because of this obligation could more readily be deemed in "actual physical control" than a person lawfully parked on the shoulder or on his or her own property.

*Id.*

Further, "[a]ctual physical control of a vehicle does not solely depend on the location of the ignition key," *City of Fargo v. Theusch*, 462 N.W.2d 162, 163 (N.D. 1990), so "[t]he location of the keys is not dispositive." *Berns v. Comm'r of Pub. Safety*, 355 N.W.2d 493, 495 (Minn. Ct. App. 1984). Here, Sergeant Zielinski found the key fob to the vehicle in Defendant's pocket, further suggesting Defendant's actual physical control of the vehicle, as the key fob was necessary to start the vehicle. *See Kozak v. Comm'r of Pub. Safety*, 359 N.W.2d 625, 628 (Minn. Ct. App. 1984) ("The trial court properly ruled that [the defendant] had physical control of the vehicle where he was found asleep in the vehicle with the keys in his possession.").

Defendant asserts, however, that he was not in actual physical control because he was asleep in the back seat with his feet on the center console. *See Atkinson*, 627 A.2d at 1028 ("[A] person asleep on the back seat, under a blanket, might not be found in 'actual physical control,' even if the engine is running."). In the Court's view, however, "the intended purpose of an intoxicated driver statute is to keep alcohol-impaired drivers off the public roads, and that an intoxicated, albeit sleeping, vehicle occupant presents a danger to the public given the potential that he could awaken and resume driving in an instant." *McFarland*, 445 F.3d at 31 (citing cases). Thus, "[a]n intoxicated individual who gets into his vehicle to sleep poses a threat of immediate operation of the vehicle at any time while still intoxicated." *Buck v. N.D. State Highway Comm'r*, 425 N.W.2d 370, 373 (N.D. 1988). "[T]he defendant could possibly wake up, find the keys in his pocket and set out on an inebriated journey at any moment." *Theusch*, 462 N.W.2d at 164.

Again, "physical control is meant to cover situations where an inebriated person is found in a parked vehicle under circumstances where the car, without too much difficulty, might again be started and become a source of danger to the operator, to others, or to property." *State v.*

*Starfield*, 481 N.W.2d 834, 837 (Minn. 1992).  Thus, "to preclude a finding of actual physical control because of a driver's presence in the back seat of his vehicle would completely vitiate the purpose of [the] drunk-driving statute, *i.e.*, keeping intoxicated drivers out of their vehicles.  The driver's location in the back seat in no way makes him harmless."  *People v. Davis*, 562 N.E.2d 1152, 1156-57 (Ill. App. Ct. 1990).  Defendant "could in an instant get back into the driver's seat just as easily as he made it to the back seat: by straddling the console between the two bucket seats."  *Id.* at 1157; *see Vanlishout v. N.D. Dep't of Transp.*, 799 N.W.2d 397, 401 (N.D. 2011) (determining that hearing officer reasonably concluded that intoxicated defendant was in physical control of vehicle; "while [the defendant] was intoxicated, he was in the backseat of a car registered to him, the car was running, and it was temporarily stuck in the ditch").  For these reasons, Defendant remained a threat to the public while intoxicated and asleep in the back seat of his vehicle with its engine running.  The Court thus finds that Defendant was in actual physical control of his vehicle while asleep on the Parkway on the morning of July 21, 2016.

Moreover, "even where a defendant is determined to have relinquished actual physical control, if it can be shown that such person drove while intoxicated to reach the place where he or she was found, the evidence will support a judgment of guilt."  *Love*, 897 P.2d at 629-30.  The evidence here suggests that Defendant had operated his vehicle while intoxicated from TGI Fridays to the Parkway.  According to Sergeant Zielinski, Defendant told him that he had been drinking vodka since 8:30 the evening before, but that someone named "Dirk" had been driving.  Besides Defendant's statement to Sergeant Zielinski, however, there was no evidence of anyone else at the scene who could have driven Defendant's vehicle.  The Court as factfinder reasonably can infer that Defendant drove the vehicle while intoxicated from TGI Fridays to where he was found on the Parkway.  *See Atkinson*, 627 A.2d at 1029 ("[H]ad there been evidence to establish

that [the defendant] had driven prior to his apprehension, he might properly have been convicted—not because of what he was doing when the officer arrived on the scene, but because of what the factfinder could have inferred he had done previously, *i.e.*, actually drive, operate, or move his vehicle while intoxicated.").  In short, the totality of the circumstances supports finding beyond a reasonable doubt that Defendant was intoxicated while in actual physical control of his motor vehicle on the Parkway on July 21, 2016.

## **CONCLUSION**

For the reasons stated above, the Court finds that the Government has proved Defendant's guilt beyond a reasonable doubt.  The matter now will be scheduled for sentencing.


Date: March 3, 2017                                             _____/s/_____

                                                      Thomas M. DiGirolamo
                                                      United States Magistrate Judge